UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAILIAN OVERSEAS CONSULTING GROUP, LTD., <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK CITY REGIONAL CENTER LLC, <br><br> Defendant. | Civil Action No. 17-cv-9004 (LLS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

KASOWITZ BENSON TORRES LLP

David E. Ross (dross@kasowitz.com)
Danielle R. Gill (dgill@kasowitz.com)
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 2

      A.    The Court Sustains Wailian's Breach of Contract Claim for the Navy Yard II Project ........................................................................................................... 3

      B.    Wailian Amends Its Complaint to State Claims for Breach of Contract for the CBD Project and the Medical Campus Project ...................................................... 4

          1.    CBD Project ..................................................................................................... 4

          2.    Medical Campus Project .................................................................................. 5

ARGUMENT ............................................................................................................................. 6

I.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES THAT WAILIAN PERFORMED AND NYCRC BREACHED THE CBD AND MEDICAL CAMPUS PROJECT SCHEDULE A AGREEMENTS, AS WRITTEN, MODIFIED OR WAIVED ... 7

      A.    The Amended Complaint Properly Alleges That NYCRC Breached the Medical Campus Project Schedule A Agreement .................................................. 8

          1.    The Amended Complaint Alleges Modification or Waiver of the Medical Campus Project "Deadline" .......................................................... 8

          2.    NYCRC Is Estopped From Belatedly Seeking Enforcement of the Medical Campus Project "Deadline" .......................................................... 11

      B.    The Amended Complaint Properly Alleges That NYCRC Breached the CBD Project Schedule A Agreement As Modified or Waived ...................................... 12

      C.    The Amended Complaint Also Properly Pleads Breach of Contract Claims Based on the Doctrine of Substantial Performance ................................................ 14

II.    THE COURT SHOULD ALSO DENY NYCRC'S IMPROPER RECONSIDERATION MOTION AS TO THE NAVY YARD II PROJECT ........................................................ 17

CONCLUSION ......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*,
  300 F. App'x 48 (2d Cir. 2008) ...........................................................................19

*Aeolus Down, Inc. v. Credit Suisse Int'l*,
  No. 10 CIV. 8293, 2011 WL 5570062 (S.D.N.Y. Nov. 16, 2011) ...................7, 10, 13, 15, 16

*Belsito Commc'ns, Inc. v. Dell, Inc.*,
  No. 12-CV-6255, 2013 WL 4860585 (S.D.N.Y. Sept. 12, 2013).............................7

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
  738 F. Supp. 2d 450 (S.D.N.Y. 2010)...................................................................16

*CreditSights, Inc. v. Ciasullo*,
  No. 05 CV 9345 (DAB), 2007 WL 943352 (S.D.N.Y. Mar. 29, 2007)...................7

*Del-Orden v. Bonobos, Inc.*,
  No. 17 CIV. 2744, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)...........................6

*Dover Ltd. v. A.B. Watley, Inc.*,
  No. 04 CIV. 7366 (FM), 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006)................19

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006)....................................................................................6

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
  848 F.2d 24 (2d Cir. 1988).......................................................................................6

*Friedl v. City of New York*,
  210 F.3d 79 (2d Cir. 2000).....................................................................................10

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*,
  7 N.Y.3d 96, 850 N.E.2d 653 (2006)....................................................................11

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*,
  128 F.3d 59 (2d Cir. 1997).......................................................................................6

*Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA,
  Nat. Ass'n v. DB Structured Prod., Inc.*,
  5 F. Supp. 3d 543 (S.D.N.Y. 2014) ......................................................................15

*Innovative Biodefense, Inc. v. VSP Techs., Inc.*,
  176 F. Supp. 3d 305 (S.D.N.Y. 2016)..............................................................14, 15

*J & R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*,
No. 12 CIV. 7497, 2013 WL 5203134 (S.D.N.Y. Sept. 16, 2013)...........................................8

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
274 F.3d 706 (2d Cir. 2001)...........................................................................................11

*Marine Transp. Lines, Inc. v. Int'l Org. of Master, Mates & Pilots*,
878 F.2d 41 (2d Cir. 1989).............................................................................................13

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
293 F. Supp. 3d 394 (S.D.N.Y. 2018).............................................................................18

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007)...........................................................................................15

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*,
980 F. Supp. 2d 400 (E.D.N.Y. 2013) ............................................................................14

*Ndremizara v. Swiss Re Am. Holding Corp.*,
93 F. Supp. 3d 301 (S.D.N.Y. 2015)...............................................................................19

*Randolph Equities, LLC v. Carbon Capital, Inc.*,
No. 05 CIV 10889 (PAC), 2007 WL 914234 (S.D.N.Y. Mar. 26, 2007)...........................7, 8

*In re Refco Sec. Litig.*,
759 F. Supp. 2d 301 (S.D.N.Y. 2010).............................................................................19

*Santos v. Fingerson*,
No. 97 CIV. 3972 (MBM), 1998 WL 788781 (S.D.N.Y. Nov. 12, 1998).............................19

*Scavenger, Inc. v. GT Interactive Software, Inc.*,
273 A.D.2d 60, 708 N.Y.S.2d 405 (1st Dep't 2000) ........................................................13

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 ...................................................................................................................18

**Other Authorities**

Local Civ. R. 6.3 .............................................................................................................17

15 Williston on Contracts § 44:52 (4th ed. 2018).........................................................14

Plaintiff Wailian Overseas Consulting Group, Ltd. ("Wailian") respectfully submits this memorandum of law in opposition to defendant New York City Regional Center LLC's ("NYCRC") motion to dismiss the amended complaint, dated July 9, 2018 (the "Motion").[1]

## PRELIMINARY STATEMENT

On May 17, 2018, this Court ruled on NYCRC's motion to dismiss four of the six contract-related claims asserted in Wailian's complaint (the "Order").[2]  The Court denied the motion to dismiss Wailian's claims with respect to the Arena and Navy Yard II Projects, as well as Wailian's alternative claims for quantum meruit.  The Court granted the motion to dismiss Wailian's claims for breach of the Medical Campus Project and CBD Project Schedule A agreements, permitting Wailian to replead those claims to allege modification of, or compliance with, the timing provisions of those agreements and the investor allotment term of the CBD Project Schedule A agreement.

In response to the Order, Wailian amended its complaint.  The Amended Complaint pleads additional facts that establish that the parties, in writing and by their conduct, modified and/or waived the relevant provisions of the Medical Campus Project and CBD Project Schedule A agreements.  The Amended Complaint's additional allegations also establish that Wailian is entitled to recover for breach of those agreements on additional grounds, including that Wailian substantially performed and that NYCRC waived compliance with, or is otherwise estopped from relying on, the purported deadline and investor allocation terms.  The Amended Complaint

---

[1]  NYCRC's Memorandum of Law in Support of the Motion (ECF Doc. 25) is referenced herein as "Def Br." and the Declaration of David J. Lender dated July 9, 2018 in support thereof (ECF Doc. 26) is referenced as "Lender Decl."  All terms not defined herein have the meaning ascribed to them in Wailian's Amended Complaint dated June 18, 2018 (ECF Doc. 23) ("Amended Complaint" or "Am. Compl.").

[2]  NYCRC did not move to dismiss the claims relating to the Waterfront and GWB Projects.

thus pleads facts that address and rectify the deficiencies identified in the Order with respect to the Medical Campus and CBD Projects.  Accordingly, the Motion should be denied as to those two projects.

The Motion is also plainly improper as regards NYCRC's second attempt to obtain dismissal of the Navy Yard II Project claim.  This Court previously found Wailian's allegations sufficient with respect to its claim for breach of the Navy Yard II Agreement.  The Motion is a *prima facie* improper motion for reconsideration:  it is untimely, and it is deficient, as it is does not identify any facts or law overlooked by the Court.  Because the Motion is improper as regards the already-determined sufficiency of the Navy Yard II Project claim, the Motion should be denied out of hand in that regard.

As the Amended Complaint pleads valid claims for breach of contract with respect to the Medical Campus Project, the CBD Project, and the Navy Yard II Project, the Motion should be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND

On November 17, 2017, Wailian filed its complaint against NYCRC, asserting claims for breach of contract and quantum meruit (ECF Doc. 1).  In January 2018, NYCRC moved to dismiss Wailian's breach of contract claims related to the Arena, Navy Yard II, Medical Campus, and CBD Projects and to dismiss Wailian's claims for quantum meruit (ECF Doc. 13-15).  By its Order dated May 17, 2018 (ECF Doc. 21), the Court denied NYCRC's motion with respect to Wailian's claims for breach of the Arena Project and Navy Yard II Project agreements and its quantum meruit claims.  Order at 14-20.  However, the Court granted NYCRC's motion to dismiss the breach of contract claims related to the Medical Campus and CBD Projects with leave to replead, finding that the complaint did not sufficiently allege modification of the

relevant agreements.  *Id.* at 12-14, 20.  Wailian filed its Amended Complaint on June 18, 2018,[3] and NYCRC's Motion followed.

As the Court's Order clearly lays out the operative facts alleged by Wailian, Order at 1-10, and as NYCRC does not challenge the sufficiency of the Amended Complaint's allegations regarding the Arena, GWB, and Waterfront Projects, *see* Def. Br. 5 n.3, Wailian summarizes only those facts relevant to the three projects challenged in the Motion:  the Navy Yard II, CBD, and Medical Campus Projects.

### A.  The Court Sustains Wailian's Breach of Contract Claim for the Navy Yard II Project

After three successful projects together (the Brooklyn Navy Yard, Steiner, and Arena Projects), NYCRC engaged Wailian to refer investors for the Navy Yard II Project.  Order at 6; Am. Compl. ¶ 39.  NYCRC initially offered Wailian 30 investor placements for the project, which it subsequently increased to 42.  Order at 6; Am. Compl. ¶ 40.  Wailian started recruiting and referring investors to NYCRC for the Navy Yard II Project before the parties executed a Schedule A agreement, despite Wailian's repeated requests for one.  Order at 6; Am. Compl. ¶ 41.  While Wailian was working on the Navy Yard II Project, the parties agreed that NYCRC would increase the per-investor annual payments due Wailian to $5,000 for each of the projects after the Arena Project, as reflected in a September 4, 2011 e-mail from NYCRC to Wailian.  Order at 6; Am. Compl.  ¶ 36.  The Court accordingly held that "the parties' agreement as reflected in the September 2011 email, which provided that Wailian would get annual payments of $5,000 for each investor that it referred, governed the parties' relationship with respect to the Navy Yard II project."  Order at 16.  "Wailian referred 41 investors to the project who NYCRC

---

[3]  A redline reflecting the amendments to Wailian's original complaint is annexed as Exhibit 1 to the Declaration of David E. Ross dated August 29, 2018 ("Ross Decl.").

accepted, but NYCRC has not paid it the annual payments due per investor." *Id.*; Am. Compl. ¶¶ 41-42.  NYCRC thus breached the parties' agreement, and Wailian is entitled to $1,025,000 in annual fees for its work on the Navy Yard II Project, which fees remain unpaid. *Id.* ¶¶ 42-43.

**B.  Wailian Amends Its Complaint to State Claims for Breach of Contract for the CBD Project and Medical Campus Project**

**1.  <u>CBD Project</u>**

The original CBD Project Schedule A guaranteed Wailian 175 investor placements through March 31, 2012 and for Wailian to receive annual payments of $5,000 per investor. Order at 7; Am. Compl. ¶ 45.  In its Order, the Court found that Wailian did not sufficiently allege that the parties modified the agreement's timing provisions or investor allocations.  Order at 13, 14.  The Amended Complaint's additional allegations, as contained in paragraph 46 thereof, rectify the deficiencies identified by the Court, and the Amended Complaint now states a claim for breach of the CBD Project Schedule A.  *See* Am. Compl. ¶ 46; Ross Decl. Ex. 1 at 10.

Specifically, the Amended Complaint adds allegations that make clear that, after the execution of the CBD Project Schedule A, NYCRC acknowledged that it would not insist on strict compliance with the Schedule A terms, stating in a March 7, 2012 email that parties should "work hard together to get as many [payments and applications] completed on the CBD Project over the next 4 weeks."  Am. Compl. ¶ 46.  The Amended Complaint further alleges that NYCRC agreed to accept – as full satisfaction of Wailian's allotment – as many investors as Wailian was able to secure by an extended deadline.  *Id.*  Thus, as alleged in the Amended Complaint, NYCRC thereby waived compliance with the 185 investor allocation, agreeing to accept whatever number of investors Wailian could provide by a new date that was not provided in the Schedule A agreement.  *Id.*

4

Ultimately, Wailian referred 115 investors to the CBD Project, for a total benefit to NYCRC of $62,157,500, for which NYCRC owes Wailian a total of $2,850,000 in annual fees, which fees remain unpaid. *Id.* ¶¶ 47-48.

### 2. **Medical Campus Project**

In early May 2012, Wailian began work on its last project with NYCRC, the Medical Campus Project. Am. Compl. ¶ 49. Before the parties executed a written agreement for the Medical Campus Project, the parties agreed on an allocation of 40 investors. *Id.*; Order at 8. Wailian fulfilled this allocation by late June 2012, and then agreed to supply an additional ten investors for a total of 50 investors. Am. Compl. ¶ 49; Order at 8-9. The parties then executed a Schedule A agreement for the Medical Campus Project that guaranteed Wailian an allocation of 50 investor placements through July 15, 2012, for which Wailian was to be paid referral fees, plus $5,000 per investor in annual payments for five years. Am. Compl. ¶ 49.

The Court found the original complaint did not sufficiently allege that the parties modified the Medical Campus Project Schedule A's timing provisions. Order at 13. The Amended Complaint contains several additional allegations that rectify the deficiencies perceived by the Court, which are reflected in paragraphs 49-51 thereof. Am. Compl. ¶¶ 49-51; Ross Decl. Ex. 1 at 12-13. Specifically, the Amended Complaint adds allegations that Wailian subsequently informed NYCRC that it could not meet the July 15 "deadline," and that, in response, NYCRC told Wailian to "do your best" on getting the investor funds in early and to send any subsequent investor funds "as soon as you can." Am. Compl. ¶ 50. The Amended Complaint further alleges that NYCRC thus modified and/or waived strict compliance with the purported deadline. *Id.* Wailian referred 43 investors of its 50 investor allocation before July 15, 2012. *Id.* ¶ 51. NYCRC ultimately permitted Wailian to deliver the seven additional investors

by ten days later, July 25, 2012, consistent with NYCRC's directive to Wailian, which investors NYCRC accepted.  *Id.* ¶ 51.  Wailian thus timely fulfilled its 50 investor allotment for the Medical Campus Project.  *Id.*  Further, at no point during the ten-day period between July 15 and July 25 did NYCRC tell Wailian that providing the last seven investors shortly after the original deadline would affect Wailian's entitlement to annual fees for the Medical Campus Project.  *Id.*

Between February 29 and July 25, 2012, Wailian referred 50 investors for a total benefit to NYCRC of $27,025,000 for the Medical Campus Project.  *Id.* ¶ 51.  NYCRC has not paid Wailian any of the $1,250,000 in annual fees that Wailian earned for the Medical Campus Project.  *Id.* ¶ 52.

## ARGUMENT

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is only proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744, 2017 WL 6547902, at *4 (S.D.N.Y. Dec. 20, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).  "The issue is not whether a plaintiff will or might ultimately prevail on [its] claim, but whether [it] is entitled to offer evidence in support of the allegations in the complaint."  *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir. 1997).  In considering the sufficiency of a pleading, the Court must thus "accept[ ] as true all facts alleged in the complaint and draw[ ] all inferences in favor of the plaintiff."  *Faulkner v. Beer*, 463 F.3d 130, 133 (2d Cir. 2006) (quotation omitted).  The Court's review is limited to the Amended Complaint and the documents incorporated therein, and factual allegations contained in defendant's legal memoranda may not be considered.  *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

6

I.    **THE AMENDED COMPLAINT ADEQUATELY ALLEGES THAT WAILIAN PERFORMED AND NYCRC BREACHED THE CBD AND MEDICAL CAMPUS PROJECT SCHEDULE A AGREEMENTS, AS WRITTEN, MODIFIED OR WAIVED**

The Amended Complaint properly pleads each and every element of Wailian's claims for breach of the Medical Campus Project and CBD Project Schedule A agreements, alleging that NYCRC breached the agreements as modified by the parties' writings and conduct.  In support of its Motion to dismiss these claims, NYCRC makes a single argument:  that Wailian fails to allege that the parties waived or modified the deadline terms.  *See* Def. Br. at A, B.  That assertion is incorrect.

As a threshold matter, it is axiomatic that "parties may modify a contract by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel." *Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 12-CV-6255, 2013 WL 4860585, at *4 (S.D.N.Y. Sept. 12, 2013) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003)). Issues of waiver, modification, and estoppel raise fact-intensive questions that are generally inappropriate for resolution on motion to dismiss.  *See, e.g.*, *CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2007 WL 943352, at *9 (S.D.N.Y. Mar. 29, 2007) ("The general rule in New York is that questions of waiver are not decided on a motion to dismiss."); *Randolph Equities, LLC v. Carbon Capital, Inc.*, No. 05 CIV 10889 (PAC), 2007 WL 914234, at *3 (S.D.N.Y. Mar. 26, 2007) (finding allegations of modifications sufficient to withstand motion to dismiss).

Accordingly, to meet its pleading burden, a plaintiff need only allege facts that "support[ ] a plausible inference" of modification or waiver.  *Aeolus Down, Inc. v. Credit Suisse*

*Int'l*, No. 10 CIV. 8293, 2011 WL 5570062, at *2 (S.D.N.Y. Nov. 16, 2011) (Stanton, J.).[4]  As

detailed herein, Wailian has done that and more, pleading specific facts that demonstrate that the

parties intended to – and did – modify the terms of the original CBD Project and Medical

Campus Project Schedule A agreements.  The Motion should therefore be denied.

A.    **The Amended Complaint Properly Alleges that Wailian Breached the
        Medical Campus Project Schedule A Agreement**

1.    **The Amended Complaint Alleges Modification or Waiver of the
           Medical Campus Project "Deadline"**

This Court found that the original complaint did not sufficiently allege that the parties

modified the Medical Campus Project Schedule A's timing provisions.  Order at 13.  The

Amended Complaint addresses and cures that perceived deficiency, alleging additional facts

showing that the parties modified or waived the purported July 15, 2012 "deadline" in the

Medical Campus Project Schedule A agreement.  Specifically, the Amended Complaint alleges

that, in late June 2012, after Wailian fulfilled its original allotment of 40 investors for the

Medical Campus Project, NYCRC offered Wailian an additional ten investor allocations in

acknowledgment of Wailian's "hard work on the Medical Campus Project."  Am. Compl. ¶ 49;

Lender Decl. Ex. G at 6.  The parties did not then agree upon a deadline for delivering the

additional investors.  *See* Am. Compl. ¶¶ 49-50.  On July 2, 2012, NYCRC merely instructed

Wailian to "do your best" and get investor funds in "as soon as you can."  *Id.* ¶ 50; Lender Decl.

---

[4]  NYCRC does not seriously dispute this well-settled standard.  Although, as NYCRC notes, the
Referral Agreement does proscribe oral modifications, *see* Def. Br. 14, that agreement does not
require that modifications be in writing, *see* Lender Decl. Ex. A at § 11.  Accordingly, Wailian's
allegations of modification and/or waiver by conduct are, "[a]t this early stage of the pleadings,"
sufficient, "despite the no-oral modification clause."  *Randolph Equities*, 2007 WL 914234, at
*3; *see J & R Elecs. Inc. v. Bus. & Decision N. Am., Inc.*, No. 12 CIV. 7497, 2013 WL 5203134,
at *6 (S.D.N.Y. Sept. 16, 2013) (construing similarly worded provision and finding that,
because, it did not speak to whether the provisions may be waived [or modified] by the parties'
*conduct*," it could not be said to proscribe such modifications).

Ex. G at 6.  Additionally, the Amended Complaint alleges that, as agreed with NYCRC, Wailian referred an additional three investors by July 15.  Am. Compl. ¶ 50.  Wailian then referred the remaining seven investors between July 15 and July 25, 2012, thereby timely fulfilling its investor allotment for the Medical Campus Project.  *Id.*

Further, as alleged in the Amended Complaint, at no point during the ten-day period between July 15 and July 25 did NYCRC tell Wailian that providing the last seven investors shortly after the purported deadline would affect Wailian's entitlement to annual fees for the entire Medical Campus Project.  *Id.*  The Amended Complaint thus pleads that, consistent with NYCRC's course of dealing on several of the previous Projects, NYCRC agreed in writing to modify the deadline previously agreed to, and that Wailian fully performed the parties' agreement as modified.  *Id.* ¶¶ 49-50; *see id.* ¶ 38.

In addition to these facts alleging modification of the purported deadline term, the Amended Complaint also alleges that NYCRC waived Wailian's compliance with any such term. NYCRC's statements – made less than two weeks before the purported July 15 deadline – that Wailian need only "do [its] best" and send funds "as soon as [it] can" are fundamentally inconsistent with strict compliance with such deadline and "evidence an indisputable mutual departure from the written agreement," which, by NYCRC's own definition, constitutes a waiver.  *See* Def. Br. 16 (quoting *Picture Patents, LLC v. Aeropostale, Inc.*, 788 F. Supp. 2d 127, 144 (S.D.N.Y. 2011)).

NYCRC's acceptance of Wailian's performance within seven days of the purported deadline further evidences waiver.  Wailian ultimately referred three additional investors (for a total of 43) by July 15, 2012, and then, as soon as it could (and in keeping with the parties' writing), completed the referrals of seven additional investors (for a total of 50) by July 25.  Am.

Compl. ¶ 51.  NYCRC did not at any point during the ten-day period between July 15 and July 25 tell Wailian that providing the additional seven investors shortly after the purported "deadline" would affect its entitlement to annual payments for the Medical Campus Project.  *Id.* As this Court has held, "[s]uch affirmative conduct and failure to act after the deadline had passed might be found to be a waiver," not just a modification.  *Aeolus Down*, 2011 WL 5570062, at *2.

The July 6, 2012 email on which NYCRC purports to rely does not compel a contrary conclusion and, at best, raises a disputed issue of fact inappropriate for resolution on this motion. *See* Def. Br. 20.  On July 6, 2012, NYCRC stated that it would be enforcing a deadline of July 15 for the additional ten allocations, but Wailian informed NYCRC that it would not be able to meet that date for "at least four of the investors," and no agreement was reached on this point.  Lender Decl. Ex. G at 3.  There is no evidence that, after the parties' July 2 agreement that Wailian would do its best, the parties agreed to enforce a July 15 deadline.  NYCRC nevertheless argues, contrary to the Amended Complaint's allegations and without evidence, that "on or about July 6, 2012, [t]he parties agreed – in a written updated Schedule A – to extend the deadline to July 15, 2012."  Def. Br. 20 (emphasis omitted).  But, defendant's impermissible attorney argument aside, all that NYCRC musters in support of this proposition is an undated agreement that *Wailian did not sign*.  *Id.* (citing Lender Decl. Ex. J).  The speculation of NYCRC's counsel cannot properly be considered by the Court and, in any event, is insufficient to rebut the well-pleaded allegations in Wailian's Amended Complaint.  *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda") (quotations and citations omitted).

Accordingly, the Amended Complaint pleads facts sufficient to show that the parties modified the timing term of the Medical Campus Project Schedule A or, alternatively, that NYCRC waived compliance with that purported July 15 "deadline."

### 2.   NYCRC Is Estopped From Belatedly Seeking Enforcement of the Medical Campus Project "Deadline"

The Amended Complaint also pleads facts that support an alternative basis for Wailian to recover on its claim for breach of the Medical Campus Project Schedule A agreement, namely that NYCRC is equitably estopped from invoking that agreement's date provisions.  Estoppel applies where "the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct."  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001); *see also Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 107, 850 N.E.2d 653, 660 (2006) ("[E]stoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." (internal quotation omitted)).

Here, the Amended Complaint alleges that NYCRC knew that it had previously declined to impose a specific deadline in favor of encouraging Wailian to "do [its] best," that Wailian had relied on that representation in the belief that no specific deadline would be enforced, and that – as of July 6 – Wailian had not agreed to any deadline, and certainly not the July 15 deadline NYCRC now purports to invoke to escape paying for Wailian's services.  Am. Compl. ¶¶ 50-51.  The Amended Complaint thus plainly pleads facts to establish that the parties modified the date term of the agreement in question, or, alternatively, facts showing that NYCRC waived such

term or is estopped from enforcing it.  Accordingly, NYCRC's Motion should be denied as regards the Medical Campus Project Schedule A agreement.

  **B.  The Amended Complaint Properly Alleges That NYCRC Breached the CBD Project Schedule A Agreement As Modified or Waived**

  In its Order, the Court found that Wailian did not sufficiently allege that the parties modified the CBD Project Schedule A's timing provisions or investor allocations.  Order at 13, 14.  The Amended Complaint's additional allegations rectify the deficiencies identified by the Court.

  First, the Amended Complaint specifically alleges that the relevant terms of the original CBD Project Schedule A, which provided for Wailian to refer 175 investors by March 31, 2012, were subsequently modified and/or waived in writing.  Am. Compl. ¶¶ 45-46.  The Amended Complaint alleges that these terms were first modified and/or waived in an email exchange shortly after the execution of the CBD Project Schedule A, when NYCRC sought to increase Wailian's investor allocation to 185 and "acknowledged that it would not insist on strict compliance with the Schedule A terms."  *See id.* ¶ 46.  NYCRC does not even attempt to challenge the sufficiency of these allegations in the Motion, implicitly conceding their adequacy.

  The Amended Complaint also alleges, and NYCRC confirms, that on March 7, 2012 – just three weeks before the purported deadline contained in the original Schedule A – NYCRC told Wailian by email: "[a]s discussed, let's work hard together to get as many [payments and applications] completed on the CBD Project over the next 4 weeks."  *Id.*; *see also* Lender Decl. Ex. I.  On its face, this email is inconsistent with the original Schedule A agreement's purported March 31, 2012 deadline contained in the original Schedule A.  Even taken literally and in isolation, NYCRC's email extended any "deadline" into April 2012 and was consistent with NYCRC's prior acknowledgment that it would not insist on strict compliance with the Schedule

A terms.  Further, the Amended Complaint alleges that, together with the off-line discussions referenced in the March 7 email, this communication evinces NYCRC's agreement "to accept – as full satisfaction of Wailian's allotment – as many investors as Wailian was able to secure by an extended deadline."  Am. Compl. ¶ 46.  Wailian's allegations that its performance under the modified agreements was undertaken with NYCRC's consent and acceptance, and met with NYCRC's express approval, further support the very plausible inference of modification and/or waiver.  *See, e.g.*, *id.* ¶¶ 42, 47, 50-51.

Moreover, such a modification, and NYCRC's acceptance of Wailian's performance of its obligations as modified, is consistent with the parties' course of conduct throughout their relationship, whereby Schedule A agreements were regularly modified, particularly with respect to investor allocations and purported deadlines.  *Id.* ¶¶ 24-25, 30-32, 36-38; *see Marine Transp. Lines, Inc. v. Int'l Org. of Master, Mates & Pilots*, 878 F.2d 41, 45 (2d Cir. 1989) ("[A]n agreement to modify a contract may be proven circumstantially by the conduct of the parties.").[5]

The written modifications alleged in the Amended Complaint, taken together with NYCRC's acceptance of Wailian's performance and the parties' general course of dealing, amply "support[ ] a plausible inference" that the parties modified the CBD Project Schedule A agreement and/or waived strict compliance with its allocation and deadline terms.  *Aeolus Down*, 2011 WL 5570062, at *2; *see also Scavenger, Inc. v. GT Interactive Software, Inc.*, 273 A.D.2d 60, 61, 708 N.Y.S.2d 405, 406 (1st Dep't 2000) (defendant waived argument that plaintiff

---

[5]  NYCRC willfully misconstrues Wailian's allegations in this regard.  Contrary to NYCRC's assertions, the prior conduct set forth in the Amended Complaint is not alleged to vary the terms of the CBD Project Schedule A agreement, *see* Def. Br. 17-18, but rather to show that it was the parties' course of dealing to modify Schedule A terms and that the modification of the CBD Project Schedule A agreement was consistent with the parties' usual practices, *see, e.g.*, Am. Compl. ¶ 38.

breached timing provision by "defendant's requests for significant modifications . . . and by defendant's acceptance" of plaintiff's performance).

Accordingly, Wailian has pled facts sufficient to establish modification and/or waiver of the deadline and allocation terms with respect to the CBD Project Schedule A agreement.

### C.    The Amended Complaint Also Properly Pleads Breach of Contract Claims Based on the Doctrine of Substantial Performance

NYCRC asserts that because Wailian was "a day late," Wailian gets none of the second half of the compensation it earned.  But the law does not permit a contracting party to reap all the benefits of a contract and then deny the other party its promised payment on the basis of some non-material, or hyper-technical breach.  *See, e.g.*, *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 980 F. Supp. 2d 400, 411 (E.D.N.Y. 2013) ("A breach is not material, and the aggrieved party is not excused from performance of its obligations, if the breaching party has substantially performed his end of the contract." (internal quotation omitted)).  Rather, the doctrine of substantial performance, which "protect[s] a party's right to be compensated when it has performed in all material and substantive respects," as Wailian has here, and it "shields the parties from the possibility that minor deviations from the precise requirements of their contract will result in harsh, severe, even draconian effects."  15 Williston on Contracts § 44:52 (4th ed. 2018).  "Because the performance that was rendered was so similar or close to that required under the contract that the failure to perform exactly results in an immaterial breach, [NYCRC got] substantially what it bargained for," and the doctrine of substantial performance forecloses NYCRC's attempt to escape its obligations on a technicality.  *Id.*

Where a party substantially performs a contract, it is due its compensation thereunder. *See Innovative Biodefense, Inc. v. VSP Techs., Inc.*, 176 F. Supp. 3d 305, 317 (S.D.N.Y. 2016) ("A breach is not material, and the aggrieved party is not excused from performance of its

obligations, if the breaching party has substantially performed his end of the contract."). In determining substantial performance under New York law,[6] courts look to "the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the performance." *Id.* (quotations and citations omitted). The issue of whether a party substantially performed is a question of fact generally inappropriate for resolution on motion to dismiss. *See, e.g.*, *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) ("The issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain."); *Ace Sec. Corp. Home Equity Loan Tr., Series 2007-HE3 ex rel. HSBC Bank USA, Nat. Ass'n v. DB Structured Prod., Inc.*, 5 F. Supp. 3d 543, 563 (S.D.N.Y. 2014) (denying motion to dismiss where plaintiff plausibly alleged substantial performance). Here, the Amended Complaint amply alleges Wailian's substantial performance of the Medical Campus Project and CBD Project Schedule A agreements.

With respect to the Medical Campus Project, it is undisputed that Wailian satisfied its full 100 investor allocation and that it did so within ten days of the purported "deadline." *See* Am. Compl. ¶ 51. The Amended Complaint makes clear that the timing provision was not a material term,[7] and thus it is properly reviewed for substantial performance. And, as the allegations in the

---

[6] The Referral Agreement provides that "[t]he validity, interpretation and enforcement of this agreement shall be governed by the law of the State of New York." Lender Decl. Ex. A at § 10.

[7] This Court has previously held that a timing condition is not material where "[n]o clause states that time is of the essence . . . , and that meaning cannot be inferred from the mere presence of the [timing] condition in the contract. Nor is there evidence that a delay would prejudice [defendant]." *Aeolus Down*, 2011 WL 5570062 at *3 (citation omitted). Here, neither the Referral Agreement nor the Schedule A agreements provides that time is of the essence (nor do

Amended Complaint make clear, Wailian did substantially comply with the timing term:  it

delivered the seven additional investors within a week-and-a-half of the claimed deadline, and

NYCRC was not (nor has it ever claimed to be) prejudiced by any claimed delay in performance.

With regard to the CBD Project, Wailian likewise completed its performance within a

reasonable time with respect to the non-material date term contained in the Schedule A

agreement.  *See* Am. Compl. ¶ 47.  Wailian referred a total of 115 investors, the majority of the

allocation set forth in the original CBD Project Schedule A agreement, which provided for an

allocation of 175 investors, and/or the subsequent October 2011 email increasing Wailian's

allotment to 185 investors.  *See id.* ¶¶ 45-47.  As the course of dealing alleged in the Amended

Complaint makes clear, the number of investors was not a material term of the parties'

agreements:  NYCRC regularly increased and decreased the allocations, or reallotted them

between different projects.  *See, e.g.*, *id.* ¶¶ 31-32, 46; Lender Decl. Exs. C-D.  NYCRC did not

suggest, and has never suggested, that substantial compliance with the allocation number would

frustrate the purpose of the agreement or deny NYCRC the benefit of Wailian's performance.

Wailian's allegations of substantial compliance with the allocation term thus allege performance

sufficient to state a claim for breach of the CBD Project Schedule A agreement, modified or not.

As the Amended Complaint plausibly alleges that Wailian substantially performed under

the CBD Project and Medical Campus Project Schedule A agreements – that is, that NYCRC got

---

they state what relevance, if any, such time periods had to the parties' performance), and
NYCRC never objected to – let alone rejected – a single "late" investor provided by Wailian, and
in fact continually praised of Wailian's performance.  *See, e.g.*, Am. Compl. ¶¶ 26, 42, 47, 51.
Thus, as in *Aeolus Down*, the date provision does bar not Wailian's recovery because it cannot be
determined whether or not it was even a material term.  *See generally CFIP Master Fund, Ltd. v.
Citibank, N.A.*, 738 F. Supp. 2d 450, 467 (S.D.N.Y. 2010) ("There is absolutely no indication
from the terms of the [relevant] agreements that an error of a few days . . .  was the sort of
material breach that should result in a complete forfeiture.").

substantially what it bargained for under those agreements – this provides an additional basis on which to deny NYCRC's Motion.

## II.     THE COURT SHOULD ALSO DENY NYCRC'S IMPROPER RECONSIDERATION MOTION AS TO THE NAVY YARD II PROJECT

In its Order, this Court upheld the sufficiency of Wailian's breach of contract claim with respect to the Navy Yard II Project and denied NYCRC's motion to dismiss that claim.  Order at 16-17.  NYCRC nevertheless moves to dismiss that claim again, though it failed to seek timely reconsideration.  NYCRC's attempt to reargue this claim is improper.

In deciding NYCRC's motion to dismiss the original complaint, the Court found that the "the parties' agreement as reflected in the September 2011 email, which provided that Wailian would get annual payments of $5,000 for each investor that it referred, governed the parties' relationship with respect to the Navy Yard II project."  Order at 16.  Accordingly, because Wailian alleged that it "referred 41 investors to the project who NYCRC accepted, but NYCRC has not paid it the annual payments due per investor," the Court concluded that Wailian properly stated a claim for breach of contract in connection with the Navy Yard II Project agreement.  *Id.* at 16-17.  As the Amended Complaint contains these same allegations, it must be sustained for the same reasons.  *See* Am. Compl. ¶¶ 39-43; *see also* Ross Decl. Ex 1 at 9-10 (showing Amended Complaint unchanged in relevant part).

NYCRC nevertheless improperly seeks reconsideration of the Court's Order.  The Court should reject the Motion.  First, NYCRC's request is untimely.  Under Local Rule 6.3, a motion for reconsideration must be made "within fourteen (14) days after the entry of the court's determination of the original motion."  Local Civ. R. 6.3.  "As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the

motion." *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397

(S.D.N.Y. 2018) (collecting cases).

Second, NYCRC does not identify any controlling law or facts overlooked by the Court.

Even a timely motion for reconsideration "will generally be denied unless the moving party can

point to controlling decisions or data that the court overlooked—matters, in other words, that

might reasonably be expected to alter the conclusion reached by the court," and such motions are

generally disfavored. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Here, the

Court expressly addressed – and rejected – the arguments that NYCRC now presses, based on to

the exact same allegations pleaded in the Amended Complaint. *Compare* Order at 16-17 (citing

ECF Doc. 1 at ¶¶ 36, 42) *with* Am. Compl. ¶¶ 36, 42. NYCRC now argues that the September 4,

2011 email does not provide for the payment of annual fees, Def. Br. 22-23, ignoring the Court's

prior holding that "the complaint alleges that the parties agreed that NYCRC would pay Wailian

annual payments of $5,000 for five years for each investor it referred to the Navy Yard II project

. . . *as reflected in writing in the September 4, 2011 email* of Paul Levinsohn," which email was

expressly considered by the Court. Order at 6, 17 (emphasis added). NYCRC's additional

argument that the Amended Complaint's allegations "contradict[ ] the express terms of the

Referral Agreement," which require a written Schedule A for each project, Def. Br. 22, likewise

contradicts the Court's finding that the parties had an enforceable agreement with respect to the

Navy Yard II Project, *see* Order at 16-17.

Third, to the extent that NYCRC presses new arguments that it previously declined to

raise, it is not permitted a second "bite at the apple" to rehabilitate its previously-unsuccessful

motion: a party may not "treat the court's initial decision as the opening of a dialogue in which

that party may then [seek] to advance new theories or adduce new evidence in response to the

court's rulings." *de los Santos v. Fingerson*, No. 97 CIV. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998).  The Court's prior ruling, as contained in the Order, is the law of the case:  it is binding and "not subject to further review at this stage." *Dover Ltd. v. A.B. Watley, Inc.*, No. 04 CIV. 7366 (FM), 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (*citing In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)); *see also Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 315 (S.D.N.Y. 2015) (denying subsequent motion to dismiss because "Defendant's attempt to relitigate this issue runs into the law-of-the-case doctrine"); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 328 (S.D.N.Y. 2010) ("There is nothing in the Amended Complaint that would change [the court's] assessment and therefore [the] ruling on the subject of [the prior motion to dismiss] is the law of the case.").

Finally, even if the Court considers NYCRC's points, those attempts at reargument fail again on the merits.  NYCRC argues that a July 6, 2012 email and draft Schedule A contradict the terms of the Navy Yard II Agreement set forth in the parties' July 11 and September 4, 2011 emails.  Def. Br. 23.  As a threshold matter, that July 6, 2012 email was before the Court, and considered by it, in connection with the Order.  Order at 6-7.  Further, the interpretation that NYCRC urges "contradicts the complaint which alleges that the parties did not execute a Schedule A for the Navy Yard II project," *id.* at 17, and that Wailian never agreed to a deadline concerning the Navy Yard II Project, Am. Compl. ¶ 42.  Finally, even if the Court had considered *and* credited this argument in connection with rendering its Order, it would at most create fact issues as to the terms of the parties' bargain that could not be resolved on this Motion. *See Advanced Mktg. Grp., Inc. v. Bus. Payment Sys.*, *LLC*, 300 F. App'x 48, 49 (2d Cir. 2008) (reversing dismissal and holding "we do not agree that the contract un-ambiguously provides that if [plaintiff] did not meet its production requirements in full each month, [it] would lose

residuals . . . Additional evidence regarding the contract negotiations and course of dealings between the parties is required.").

Accordingly, NYCRC's disguised motion for reconsideration regarding the Navy Yard II Project is both procedurally improper and meritless.

## **CONCLUSION**

For the foregoing reasons, Wailian respectfully requests that the Court deny the Motion in its entirety.

Dated: New York, New York
         August 29, 2018

                                        KASOWITZ BENSON TORRES LLP

                                        _____/s/  *David E. Ross*_____
                                        David E. Ross (dross@kasowitz.com)
                                        Danielle R. Gill (dgill@kasowitz.com)
                                        1633 Broadway
                                        New York, New York 10019
                                        (212) 506-1700

                                        *Attorneys for Plaintiff*